IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MARLON DANTRUCE WILLIAMS, §
TDCJ #935987, §
§
Petitioner, §
§
v. §
§           CIVIL ACTION NO. H-14-2098
§
LORIE DAVIS, Director, §
Texas Department of Criminal §
Justice - Correctional §
Institutions Division, §
§
Respondent. §

## MEMORANDUM OPINION AND ORDER

Marlon Dantruce Williams (TDCJ #935987) has filed a Petition
for a Writ of Habeas Corpus By a Person in State Custody
("Petition") (Docket Entry No. 1) challenging his murder conviction
in Harris County cause number 820802 under 28 U.S.C. § 2254.
Respondent has filed Respondent Davis's Motion for Summary Judgment
With Brief in Support ("Respondent's MSJ") (Docket Entry No. 30)
arguing that the Petition is barred by the governing one-year
statute of limitations and, alternatively, the claims lack merit.
Williams has filed Petitioner's Response to Respondent's Motion for
Summary Judgment With Brief in Support ("Petitioner's Response")
(Docket Entry No. 34). After considering all of the pleadings, the
state court records, and the applicable law, the court will grant
Respondent's MSJ and will dismiss this action for the reasons
explained below.

## I. Background and Procedural History

Williams seeks federal habeas corpus review of a conviction that was entered against him in the 178th District Court for Harris County, Texas, on July 14, 2000.[1] The Petition is based, in part, on evidence in the form of a police report that Williams discovered several years after his conviction became final. What follows is a chronology of the offense, investigation, and trial that led to the murder conviction against Williams, as well his belated efforts to challenge that conviction on state and federal habeas review.

### A. The Offense and Investigation

At approximately 10:15 a.m. on July 10, 1999, two black males entered the Southern Style Clip Joint Barbershop (the "Barbershop") in Houston, Texas.[2] The men were looking for the Barbershop's owner (Frederick LeBlanc), who was known as "B."[3] Tristan Thompson was working as one of the barbers that day.[4] When Thompson told the men that B had not yet arrived at the Barbershop, one of the men shot Thompson in the head, killing him.[5] The same man then

---

[1] Judgment, Docket Entry No. 28-1, p. 27. For purposes of identification all page citations refer to the page number imprinted by the court's electronic filing system, CM/ECF.

[2] Complaint, Docket Entry No. 27-1, p. 6.

[3] Id.

[4] Id.

[5] Id.

turned the gun on another barber, Danny Swanson ("Swanson"), and shot him in the right hip.[6]  The man fired another shot before leaving the Barbershop.[7]

Sergeant G.J. Novak of the Houston Police Department ("HPD"), who investigated the case with Officer Henry F. Chisholm, subsequently received an anonymous tip through Crime Stoppers, identifying Derrick Turner and Marlon Dantruce Williams as the two men who entered the barbershop, killing Thompson and wounding Swanson.[8]  After viewing a live line-up on August 10, 1999, which included Turner but not Williams, two witnesses identified Turner as the person they saw shoot Thompson and Swanson.[9]  As a result, murder charges were filed against Turner.[10]  When Swanson saw a videotape of the same lineup on August 12, 1999, Swanson identified Turner as being present, but positively identified Williams from a separate photo array as the man who shot him and killed Thompson in the Barbershop on July 10, 1999.[11]  Turner subsequently gave a statement to police, admitting that he was present in the

---

[6]Id.  Swanson is mistakenly identified as "Danny Dawson" in the Complaint and other documents.  To avoid confusion, the court will refer to him only as Danny Swanson.

[7]Id.

[8]Id.

[9]Id. at 7.

[10]Id.

[11]Id.

Barbershop, but that Williams was the shooter.[12]  Based on this information, a grand jury returned an indictment against Williams, charging him with Thompson's murder in Harris County cause number 820802.[13]

## B.   The Pretrial and Trial Proceedings

Before trial defense counsel filed a motion for the State to disclose the identity of the confidential informant who made the anonymous tip to Crime Stoppers, which led to Williams' identification and arrest.[14]  After conducting an _in camera_ review of the information provided to police, the trial court denied defense counsel's request to disclose the confidential informant's identity.[15]

On July 10, 2000, the day that a jury trial was set to commence in the 178th District Court of Harris County, Williams' defense counsel requested a continuance to secure the presence of eyewitness Melvina Francis Page, who had identified Derrick Turner

---

[12]Court Reporter's Record, vol. 6, Docket Entry No. 25-8, pp. 10-15.

[13]Indictment, Docket Entry No. 27-1, p. 14.

[14]Motion for Discovery and Inspection, Docket Entry No. 27-1, p. 25; Court Reporter's Record, vol. 1A, Docket Entry No. 25-3, pp. 10-14.

[15]Court Reporter's Record, vol. 2, Docket Entry No. 25-4, pp. 18-22.

as the shooter, and two other witnesses.[16]   The motion for a continuance was denied.[17]

At trial, the State presented evidence that the offense stemmed from a "yacht party" in Kemah, Texas, that was attended by around a hundred people who were filming a music video for a local rap group on the night of July 9, 2000.[18]  At that party Williams and Turner were injured during a fight with Frederic LeBlanc and some of his associates.[19]  The day after the yacht party Williams and Turner went to the Barbershop to confront LeBlanc.[20]

Danny Swanson testified that Williams was the man who walked into the Barbershop on July 10, 1999, and shot him in the hip after he shot and killed Tristan Thompson without any provocation.[21] Turner also testified as a State's witness, identifying Williams as the man who killed Thompson and shot Danny Swanson in the

_____

[16]Motion for Continuance, Docket Entry No. 28-1, p. 3; Court Reporter's Record, vol. 2, Docket Entry No. 25-4, pp. 4-5.

[17]Court Reporter's Record, vol. 2, Docket Entry No. 25-4, p. 18.

[18]Court Reporter's Record, vol. 5, Docket Entry No. 25-7, pp. 149-50, 152-53; Court Reporter's Record, vol. 6, Docket Entry No. 25-8, pp. 114-16.

[19]Court Reporter's Record, vol. 5, Docket Entry No. 25-7, pp. 155-60; Court Reporter's Record, vol. 6, Docket Entry No. 25-8, pp. 116-21.

[20]Court Reporter's Record, vol. 5, Docket Entry No. 25-7, pp. 161-70.

[21]Court Reporter's Record, vol. 5, Docket Entry No. 25-7, pp. 16-63.

Barbershop.[22] This testimony was further corroborated by additional witnesses who did not see the shooter's face, but identified Williams as the shooter by describing distinctive items of clothing that he was wearing when the shooting occurred.[23]

There were conflicting accounts during the police investigation about which man, Williams or Turner, opened fire that day killing Thompson and injuring Swanson. Officer Chisholm testified that Swanson strongly identified Williams as the shooter and Turner as the non-shooter after viewing a photographic line-up on August 12, 1999,[24] but that Melvina Francis Page made a "strong tentative identification" of Turner as the shooter, clarifying that she was 90% sure of her identification.[25] Page's young son, Robert McCaa, also identified Turner as the shooter.[26] Page's mother, Linda McCaa, recognized Turner as one of the men who entered the Barbershop, but identified Williams as the shooter.[27]

---

[22]Id. at 143-190; Court Reporter's Record, vol. 6, Docket Entry No. 25-8, pp. 6-16.

[23]Court Reporter's Record, vol. 5, Docket Entry No. 25-7, pp. 102-43.

[24]Court Reporter's Record, vol. 6, Docket Entry No. 25-8, pp. 162-5, 170-71.

[25]Court Reporter's Record, vol. 6, Docket Entry No. 25-8, p. 165.

[26]Id. at 186.

[27]Id. at 166-67, 187.

On July 13, 2000, the jury found Williams guilty as charged in the Indictment.[28] On July 14, 2000, the trial court sentenced Williams to life imprisonment,[29] consistent with the jury's verdict on punishment.[30]

## C.  Williams' Direct Appeal

On direct appeal Williams argued that the trial court erred by denying his pretrial motion to disclose the identity of the confidential informant.[31] An intermediate court of appeals rejected the argument and affirmed the conviction on October 17, 2001. See Williams v. State, 62 S.W.3d 800 (Tex. App. — San Antonio 2001, no pet.).[32] Because Williams did not file a petition for discretionary review by the Texas Court of Criminal Appeals, his conviction became final when the time to seek further review expired on November 16, 2001, 30 days after the appellate court's decision.

## D.  State Collateral Review

More than a decade after his conviction became final Williams asked an unidentified friend to contact HPD and request a copy of

---

[28]Verdict, Docket Entry No. 28-1, p. 18.

[29]Judgment in Cause No. 820802, Docket Entry No. 28-1, p. 27.

[30]Verdict on Punishment, Docket Entry No. 28-1, p. 25.

[31]Appellant's Brief, Docket Entry No. 26-1, p. 9.

[32]Opinion dated October 17, 2001, in Williams v. State, No. 04-00-646-CR, Docket Entry No. 26-6, pp. 1-3.

the police report in his case.[33]  Williams does not specify when he received the police report.  When he reviewed the report, Williams noted that it contained information that Danny Swanson initially declined to identify anyone as the shooter in this case when he was shown a photographic line-up on August 9, 1999.[34]  The report states, in pertinent part, as follows:

> . . . THE PHOTO ARRAY WAS SHOWN TO DANNY AT 1545 HOURS. IT WAS OBVIOUS TO THIS SERGEANT THAT [SWANSON] RECOGNIZED SOMEONE IN THE PHOTOS SHOWN.  HE BECAME VERY NERVOUS AND STATED THAT HE [WAS] SO AFRAID THAT THEY ARE GOING TO FIND HIM AND SHOOT HIM AGAIN.  HE STATED THAT HE HAD NOT WORKED SINCE THIS INCIDENT NOR HAD [HE] GONE HOME . . . .[35]

In a supplemental entry to the police report on August 12, 1999, Sergeant Novak showed Swanson the photo array again:

> [SWANSON] WAS THEN ASKED IF HE WOULD VIEW THE PHOTO ARRAY PREPARED IN THIS CASE TO SEE IF [HE] MIGHT RECOGNIZE ANYONE.  HE WAS AGAIN TOLD THAT HE WAS UNDER NO OBLIGATION TO IDENTIFY [ANYONE].  HE AGAIN STATED THAT HE FEARED FOR HIS SAFETY AND THAT THEY MIGHT COME AFTER HIM. HE WAS ASSURED THAT SHOULD HE RECEIVE ANY THREATS OF RETALIATION HE SHOULD NOTIFY THIS SERGEANT IMMEDIATELY . . . . [SWANSON] WAS MAKING EVERY EXCUSE HE COULD NOT TO VIEW THE PHOTOS.  IT WAS VERY OBVIOUS THAT DANNY [SWANSON] FEARS FOR HIS SAFETY SHOULD HE IDENTIFY THE SHOOTER IN THIS CASE. . . .[36]

_____

[33]Petitioner's Memorandum in Support of Petition for Writ of Habeas Corpus (2254) ("Petitioner's Memorandum"), Docket Entry No. 5, p. 2 n.1; p. 4 n.3

[34]HPD Current Information Report, Incident No. 089633699, Exhibit A to Petitioner's Memorandum, Docket Entry No. 5-2, pp. 2-16.

[35]Id. at 7.

[36]Id. at 12-13.

Swanson then identified Williams as the man who shot him and killed Tristan Thompson in the Barbershop on July 10, 1999.[37]

In an Application for a Writ of Habeas Corpus Seeking Relief From Final Felony Conviction Under Code of Criminal Procedure, Article 11.07 ("State Habeas Application") that was executed and filed on February 24, 2012,[38] Williams argued that the police report contains evidence that Swanson "failed" to identify him as the shooter on August 9, 1999, which is "exculpatory" because it casts doubt on the credibility of the identification that Swanson made when he was shown the photo array again on August 12, 1999.[39] Because his trial attorney did not question Swanson or Officer Chisholm about Swanson's initial failure to identify him as the shooter, Williams surmised that the State must have suppressed this exculpatory evidence of his "actual innocence" and that Officer Chisholm's testimony about Swanson's identification was "false."[40] Asserting these claims along with several others, Williams raised the following grounds for relief on state court review:

(1)     Williams was denied a fair trial due to prosecutorial misconduct because the State –

      (a)     suppressed exculpatory evidence from the police report showing that Danny Swanson

---

[37]Id.

[38]Exhibit A to Respondent's MSJ, Docket Entry No. 30-1, pp. 2-15.

[39]Id. at 7.

[40]Id. at 7, 10.

-9-

failed to identify him initially at a
photographic line-up on August 9, 1999;

(b)  withheld or omitted evidence from the police
     report showing that Swanson viewed a videotape
     of the yacht party, but failed to identify
     Williams from that footage;

(c)  directed a police officer (Officer Chisholm)
     to testify falsely about when Swanson was
     shown a photographic line-up; and

(d)  presented false evidence and argument about
     whether Melvina Page's identification of
     Derrick Turner as the shooter was "tentative."

(2)  Williams was denied effective assistance of counsel
     before his trial because his defense attorney
     failed to:

     (a)  adequately prepare for trial by conducting an
          independent investigation beyond the informa-
          tion provided by the State;

     (b)  locate three witnesses (Melvina Page, Robert
          McCaa, Linda McCaa, and Reandrea Adams) who
          were critical to the defense;

     (c)  locate, interview, and subpoena Melvina Page,
          Robert McCaa, Linda McCaa, and Reandrea Adams;
          and

     (d)  interview Danny Swanson or Frederic LeBlanc
          before trial.

(3)  Williams was denied effective assistance of counsel
     during his trial because his defense attorney
     failed to file a motion to suppress Swanson's in-
     court identification after learning during the
     trial that police had shown Swanson a video of the
     yacht party.

(4)  Williams was denied effective assistance of counsel
     during his trial because his defense attorney
     failed to:

     (a)  correct the misleading testimony about whether
          Melvina Page's pretrial identification of
          Turner as the shooter was tentative;

> (b) impeach Officer Chisholm's false testimony about when Swanson was shown the photographic line-up;
>
> (c) impeach Officer Chisholm and Sergeant Novak about whether they showed Swanson the yacht party video, in which Williams was "prominently" shown, before he identified Williams as the shooter.
>
> (5) There is "newly discovered" evidence in the form of a "nonpublic" police report that contains exculpatory information about Swanson's failure to identify Williams on August 9, 1999, which shows that Williams is "actually innocent."[41]

This State Habeas Application remains pending in state court without an adjudication on the merits.[42]

## E. Williams' Federal Habeas Proceeding

On July 18, 2014, Williams executed and filed the pending pro se federal Petition, raising the same grounds for relief that he presented in his State Habeas Application.[43] The court initially dismissed the Petition without prejudice after observing that Williams's State Habeas Application remained pending in state court and that he had not yet exhausted available remedies as required by 28 U.S.C. § 2254(b) by presenting his claims for adjudication to

---

[41]Id. at 7-11.

[42]Harris County District Clerk's Office, State v. Williams, Cause No. 820802-A, at http://www.hcdistrictclerk.com (last visited October 4, 2017).

[43]Petition, Docket Entry No. 1, p. 11. Because Williams filed his Petition while incarcerated, the mail box rule applies, meaning that the date he placed his pleadings in the prison mail system, July 18, 2014, is considered to be the filing date. See Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998).

the Texas Court of Criminal Appeals.[44] Noting that Williams's State Habeas Application had been pending for several years without any activity, the Fifth Circuit vacated this court's dismissal order and remanded the case after the State waived the exhaustion requirement.[45]

The respondent has now moved for summary judgment, arguing that the police report that Williams claims to have recently discovered was available to defense counsel at the time of trial.[46] To the extent that his claims are based on the trial record and could have been raised previously if due diligence had been used, the respondent contends that the Petition must be dismissed because it is barred by the governing one-year statute of limitations on federal habeas corpus review.[47] The respondent argues, in the alternative, that all of Williams' claims are without merit.[48]

Williams, who has filed a response to Respondent's MSJ with the assistance of counsel,[49] disputes that the entire police report

---

[44]Memorandum Opinion and Order dated July 25, 2014, Docket Entry No. 3.

[45]Williams v. Davis, No. 14-20543 (5th Cir. Dec. 29, 2016) (per curiam), Docket Entry No. 16, p. 2.

[46]Respondent's MSJ, Docket Entry No. 30, pp. 27-28.

[47]Id. at 28-42.

[48]Id. at 42-95.

[49]Counsel appears to have been appointed by the Fifth Circuit for the purpose of Williams' appeal.

was available at trial and argues that at least three of his claims are based on evidence that was only discovered by Williams after trial; the page of the police report that showed that Danny Swanson initially "failed" to identify Williams from a photographic line-up on August 9, 1999.[50] Arguing that this page must have been suppressed, Williams contends that the Petition is not untimely with regard to Claims 1a, 1c, and 4b.[51] Williams does not address the timeliness or merits of his other claims (Claims 1b, 1d, 2a-d, 3, 4a, 4c, and 5), which are not based on the police report; and he appears to concede that they are time-barred. As a result, the court will not consider those claims further.

## II. **Standard of Review**

The Respondent's MSJ is governed by Rule 56 of the Federal Rules of Civil Procedure, which applies in a federal habeas corpus proceeding to the extent that it does not conflict with the Rules Governing Section 2254 Proceedings in the United States District Courts. See Smith v. Cockrell, 311 F.3d 661, 668 (5th Cir. 2002) ("[Rule 56] applies only to the extent that it does not conflict with the habeas rules."), abrogated on other grounds by Tennard v. Dretke, 124 S. Ct. 2562 (2004).

Under Rule 56 a reviewing court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any

---

[50]Petitioner's Response, Docket Entry No. 34, pp. 5, 24-26.

[51]Id. at 5, 16-24.

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986). A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. Id.

In deciding a summary judgment motion, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010) (internal citation and quotation marks omitted). However, the non-movant cannot avoid summary judgment simply by presenting "'[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." Jones v. Lowndes County, Mississippi, 678 F.3d 344, 348 (5th Cir. 2012) (quoting TIG Insurance Co. v. Sedgwick James of Washington, 276 F.3d 754, 759 (5th Cir. 2002)). If the movant demonstrates the absence of a genuine issue of material fact, the burden shifts to the non-movant to provide "'specific facts showing that there is a genuine issue for trial,'" Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986), or, in the context of federal habeas corpus review, an evidentiary hearing under 28 U.S.C. § 2254(e)(2).

-14-

# III. <u>Discussion</u>

## A. Statute of Limitations

According to the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), all federal habeas corpus petitions filed after April 24, 1996, are subject to a one-year limitations period found in 28 U.S.C. § 2244(d), which provides as follows:

> (d)(1)   A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--
>
> (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  Because the pending Petition was filed well after April 24, 1996, the one-year limitations period clearly applies.  <u>See</u> <u>Flanagan v. Johnson</u>, 154 F.3d 196, 198 (5th Cir. 1998) (citation omitted).

To the extent that Williams challenges a state court judgment of conviction, the statute of limitations began to run pursuant to § 2244(d)(1)(A) when his time to pursue direct review expired. Because Williams did not file a petition for discretionary review with the Texas Court of Criminal Appeals after his conviction was affirmed on October 17, 2001, his time to pursue direct review expired thirty days later on November 16, 2001.[52] That date triggered the statute of limitations, which expired one year later on November 16, 2002. The Petition, which is dated July 18, 2014, is nearly 12 years late and is time-barred unless a statutory or equitable exception applies.

## B.  Statutory Tolling

Williams asserts that he is entitled to tolling of the statute of limitations until the time that his friend obtained a copy of the police report from HPD.[53] Williams does not dispute that defense counsel had access to the police report before trial. However, because defense counsel did not cross-examine Swanson or Officer Chisholm about Swanson's initial failure to make an identification from the photo array that he was shown on August 9, 1999, Williams reasons that this page of the report must have been

---

[52]See Tex. R. App. P. 68.2(a) (the time to seek a petition for discretionary review expires 30 days after the intermediate court issues its opinion); see also Roberts v. Cockrell, 319 F.3d 690, 694 (5th Cir. 2003) (observing that a conviction "becomes final when the time for seeking further direct review in the state court expires").

[53]Petitioner's Response, Docket Entry No. 34, pp. 25-26.

suppressed.[54] Williams therefore contends that tolling is warranted because he was subject to state action that impeded him from filing three of his grounds for relief (Claims 1a, 1c, and 4b) in a timely manner.[55] See 28 U.S.C. § 2244(d)(1)(B). Alternatively, Williams argues that these grounds for relief rely on a factual predicate that could not have been discovered previously if due diligence had been used.[56] See 28 U.S.C. § 2244(d)(1)(D).

The record confirms that defense counsel had access to the police report before Williams' trial. The respondent has provided an affidavit from Williams' trial attorney, George Parnham.[57] Parnham conceded in that affidavit that he had little recollection of his pretrial preparation because substantial time has passed since the case was tried 17 years ago.[58] Parnham confirms, however, that he had access to the police report in Williams' case and would have reviewed a copy "very early on in [his] preparation for the defense of Marlon Williams."[59] Although Parnham could not recall the exact date that he reviewed the police report, he and his private investigator used the report to identify and interview witnesses who identified Derrick Turner as the shooter on the same

─────────────────────

[54]Id. at 17.

[55]Id. at 24.

[56]Id.

[57]Affidavit of George J. Parnham ("Parnham Affidavit"), Exhibit A to Respondent's MSJ, Docket Entry No. 30-1, pp. 17-21.

[58]Id. at 19-20.

[59]Id. at 18.

page that Williams claims was suppressed.[60] Parnham also recalled Swanson's positive identification as the result of being shown a photo spread by HPD and determined that it was not suggestive or that there was any "viable suppression issue."[61]

The record confirms that the State's file was "open" to defense counsel once Williams was indicted and Parnham had access to the police report, which he referenced on several occasions during pretrial proceedings.[62] Because Parnham made reference to other information found on the same page as the photo array shown to Swanson and other witnesses on August 9, 1999, the record is evidence that Parnham had access to that page of the report.[63] Williams presents no evidence to the contrary. Williams' speculation that defense counsel must have lacked access to the precise page of the police report showing that Swanson was too afraid to make an identification on August 9, 1999, when defense counsel referenced information from the same page of that report during pretrial proceedings, raises nothing more than a metaphysical doubt

---

[60]Id. at 18-19 (noting identifications that were made by Melvina Page, her son, Robert McCaa, and her mother, Linda McCaa, and documented on the same page that Williams' claims were suppressed); HPD Current Information Report, Incident No. 089633699, Docket Entry No. 5-2, p. 7.

[61]Parnham Affidavit, Exhibit A to Respondent's MSJ, Docket Entry No. 30-1, p. 20.

[62]Court Reporter's Record, vol. 1A, Docket Entry No. 25-3, pp. 10-11, 15; Court Reporter's Record, vol. 2, Docket Entry No. 25-4, p. 15; Court Reporter's Record, vol. 3, Docket Entry No. 25-5, p. 13.

[63]Court Reporter's Record, vol. 3, Docket Entry No. 25-5, p. 13 (referencing information about the confidential informant).

about whether this portion of the report was available, which is not sufficient to preclude summary judgment. See <u>Matsushita</u>, 106 S. Ct. at 1356 (the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts"); <u>McCarty v. Hillstone Restaurant Group, Inc.</u>, 864 F.3d 354, 357 (5th Cir. 2017) (observing that the non-movant's burden "will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence'") (quoting <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

Williams gives no explanation for his decision to wait over a decade before requesting a copy of the police report or pursuing collateral review. Williams does not otherwise establish that he was impeded by state action or that the facts underlying his claims could not have been discovered previously if due diligence had been used. Because Williams does not demonstrate that statutory tolling is available under 28 U.S.C. § 2244(d)(1)(B) or § 2244(d)(1)(D), the Petition is untimely, and the respondent is entitled to summary judgment on all of petitioner's claims. Alternatively, the claims briefed by Williams in response to Respondent's MSJ (Claims 1a, 1c, and 4b) lack merit for reasons discussed briefly below.

## C. Alternatively, the Claims Lack Merit

### 1. The Brady Claim (Claim 1a)

Williams claims that the prosecution violated his right to due process under <u>Brady v. Maryland</u>, 83 S. Ct. 1194 (1963), by

suppressing a page from the police report that showed that Danny Swanson was too afraid to identify the shooter from a photo array that he was shown on August 9, 1999. In <u>Brady</u> the Supreme Court held that the government violates due process when it fails to disclose evidence favorable to the accused where such evidence is "material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." <u>Id.</u> at 1196-97. The government's duty to disclose extends to both impeachment and exculpatory evidence. <u>See</u> <u>United States v. Bagley</u>, 105 S. Ct. 3375, 3380 (1985). Thus, to establish a <u>Brady</u> violation, a defendant must prove that: (1) evidence was withheld or suppressed by the prosecutor, either willfully or inadvertently; (2) the evidence was favorable to the defendant, either because it was exculpatory or because it has impeachment value; and (3) the evidence was material such that prejudice ensued. <u>See</u> <u>Strickler v. Greene</u>, 119 S. Ct. 1936, 1948 (1999). Evidence is material under <u>Brady</u> "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." <u>Bagley</u>, 105 S. Ct. at 3383.

For reasons discussed previously, Williams has not shown that any portion of the police report was suppressed or that his defense counsel lacked access to it before trial. Williams' unsupported suspicion that a page was missing from the police report is "purely speculative" and cannot support a <u>Brady</u> claim. <u>See</u> <u>Hughes v. Johnson</u>, 191 F.3d 607, 629-30 (5th Cir. 1999) (citing <u>United States</u>

v. Pretel, 939 F.2d 233, 240 (5th Cir. 1991)); see also Murphy v. Johnson, 205 F.3d 809, 814 (5th Cir. 2000) ("Allegations that are merely 'conclusionary' or are purely speculative cannot support a Brady claim.").

More importantly, Williams does not show that the evidence at issue (Swanson's refusal to identify anyone on August 9, 1999, because he feared for his life), would have made any difference in this case. It is undisputed that Swanson identified Williams as the shooter on August 12, 1999, when Swanson reiterated that he was "very scared" and feared for his safety.[64] Swanson also identified Williams as the shooter at trial.[65] Swanson's identification was corroborated by Derrick Turner and other eyewitnesses who described Williams as the shooter.[66] Impeachment evidence is not material where the testimony of the witness who might have been impeached is strongly corroborated by additional evidence supporting a guilty verdict. See United States v. Weintraub, 871 F.2d 1257, 1262 (5th Cir. 1989) (citing United States v. Risken, 788 F.2d 1361, 1375 (8th Cir. 1986)); see also Rocha v. Thaler, 619 F.3d 387, 396-97 (5th Cir. 2010).

---

[64]HPD Current Information Report, Incident No. 089633699, Docket Entry No. 5-2, pp. 12-13.

[65]Court Reporter's Record, vol. 5, Docket Entry No. 25-7, pp. 16-63.

[66]Id. at 143-190; Court Reporter's Record, vol. 6, Docket Entry No. 25-8, pp. 6-16.

Because Williams does not demonstrate that the result of the proceeding would have been any different if the jury had known that Swanson was too afraid to make an identification on August 9, 1999, he does not raise a genuine issue of material fact on whether a Brady violation occurred. Therefore, the respondent is entitled to summary judgment on this claim.

2.    The *Giglio* Claim (Claim 1c)

Williams contends that the prosecutor violated his right to due process under Giglio v. United States, 92 S. Ct. 763 (1972), when she directed Swanson and Officer Chisholm to testify falsely about when Swanson was shown a photographic line-up.  The State violates due process when it knowingly presents false evidence at trial or allows untrue testimony to go uncorrected.  See Giglio, 92 S. Ct. at 766; see also Napue v. People of the State of Illinois, 79 S. Ct. 1173, 1177 (1959).  To establish a due process violation based on the government's use of false or misleading testimony, a habeas petitioner must demonstrate the following:  "(1) the witness gave false testimony; (2) the falsity was material in that it would have affected the jury's verdict; and (3) the prosecution used the testimony knowing it was false."  Reed v. Quarterman, 504 F.3d 465, 473 (5th Cir. 2007) (citing May v. Collins, 955 F.2d 299, 315 (5th Cir. 1992)).

Williams takes issue with testimony showing that Swanson identified Williams as the shooter from a photo array that he was

shown on August 12, 1999. Williams argues that the testimony is "actually false" because Swanson was first shown the photo array on August 9, 1999, but he did not actually make an identification at that time.[67] Officer Chisholm testified that on August 12, 1999, Swanson positively identified Williams as the shooter.[68] Swanson testified generally to the identification that he made after viewing a photographic line-up, without specifying the particular date that he made the identification.[69] The record does not reflect that either witness intentionally testified falsely or that the prosecutor directed them to do so. Williams fails to establish a violation of Giglio or show that he is entitled to relief on this issue. Accordingly, the respondent is entitled to summary judgment on this claim.

### 3. Ineffective Assistance of Counsel (Claim 4b)

Assuming that defense counsel had a complete copy of the police report, Williams contends that he was ineffective for failing to impeach Officer Chisholm about Swanson's initial failure to identify him on August 9, 1999.[70] Claims for ineffective assistance of counsel are governed by the standard found in

---

[67]Petitioner's Response, Docket Entry No. 34, p. 19.

[68]Court Reporter's Record, vol. 6, Docket Entry No. 25-8, pp. 145, 159-161.

[69]Court Reporter's Record, vol. 5, Docket Entry No. 25-7, pp. 53-60.

[70]Petitioner's Response, Docket Entry No. 34, pp. 5, 16-24.

Strickland v. Washington, 104 S. Ct. 2052 (1984). To prevail under the Strickland standard a defendant must demonstrate (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. Id. at 2064. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Id.

"To satisfy the deficient performance prong, 'the defendant must show that counsel's representation fell below an objective standard of reasonableness.'" Hoffman v. Cain, 752 F.3d 430, 440 (5th Cir. 2014) (quoting Strickland, 104 S. Ct. at 2064), cert. denied, 135 S. Ct. 1160 (2015). This is a "highly deferential" inquiry; "[t]here is 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Id. (quoting Strickland, 104 S. Ct. at 2065).

To satisfy the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A habeas petitioner must "affirmatively prove prejudice." Id. at 693. A petitioner cannot satisfy the second prong of Strickland with mere speculation and conjecture. See Bradford v. Whitley, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations are insufficient to demonstrate either deficient performance or actual prejudice. See Day v. Quarterman, 566 F.3d 527, 540-41 (5th Cir. 2009); see also Lincecum

-24-

v. Collins, 958 F.2d 1271, 1279-80 (5th Cir. 1992) (stating that an ineffectiveness claim based on speculation or conclusional rhetoric will not warrant relief).

In response to this claim, Parnham states that the three-day difference between the photo spreads shown to Swanson on August 9 and 12, 1999, were "not significant in importance in the cross-examination of Officer Chisolm."[71] Williams does not show that it was significant or material and he does not demonstrate that his counsel's strategic decision was deficient. Impeaching Officer Chisholm with information showing that Swanson was too afraid to make an identification on August 9, 1999, would likely have reinforced the fact that Swanson was in fear for his life from the shooter, whom he positively ("a hundred percent") identified as Williams.[72] Although Williams disagrees, he has not overcome the substantial deference that Strickland requires where defense counsel's strategic decisions are concerned. Strickland, 104 S. Ct. at 2065 ("Judicial scrutiny of counsel's performance must be highly deferential."). Based on this record, Williams has not established deficient performance or actual prejudice and he has not demonstrated that he was denied effective assistance of counsel. Therefore, the respondent is entitled to summary judgment on this claim.

---

[71]Parham Affidavit, Exhibit A to Respondent's MSJ, Docket Entry No. 30-1, p. 21.

[72]Court Reporter's Record, vol. 5, Docket Entry No. 25-7, pp. 57-60.

Because all of Williams' remaining claims (Claims 1b, 1d, 2a-d, 3, 4a, 4c, and 5) are time-barred or have been abandoned for reasons stated previously, Williams does not establish that he is entitled to federal habeas corpus relief. Accordingly, the Petition will be denied and this case will be dismissed.

## IV. Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that 'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" Tennard v. Dretke, 124 S. Ct. 2562, 2565 (2004) (quoting Slack v. McDaniel, 120 S. Ct. 1595, 1604 (2000)). Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." Slack, 120 S. Ct. at 1604.

A district court may deny a certificate of appealability, sua sponte, without requiring further briefing or argument. See

-26-

<u>Alexander v. Johnson</u>, 211 F.3d 895, 898 (5th Cir. 2000). For reasons set forth above, this court concludes that jurists of reason would not debate whether any procedural ruling in this case was correct or whether the petitioner states a valid claim for relief. Therefore, a certificate of appealability will not issue.

### V. Conclusion and Order

The court **ORDERS** as follows:

1. Respondent Davis's Motion for Summary Judgment (Docket Entry No. 30) is **GRANTED**.

2. The Petition for a Writ of Habeas Corpus By a Person in State Custody filed by Marlon Dantruce Williams (Docket Entry No. 1) is **DISMISSED with prejudice**.

3. A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this 10th day of October, 2017.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE